## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-00257-NYW

PAMELA LOGAN, on behalf of herself and all others similarly situated,

     Plaintiff,

v.

UNITED AMERICAN SECURITY, LLC,

     Defendant.

---

## ORDER

Magistrate Judge Nina Y. Wang

     This matter comes before the court on the Parties' Joint Motion for Approval of FLSA Opt-In Notice and Notice of Settlement (the "Motion"), which seeks court approval of the Parties' proposed Fair Labor Standards Act ("FLSA") Opt-In Notice and Notice of Settlement (the "Notice"). [Doc. 43, filed October 15, 2021]. The court considers the Motion pursuant to 28 U.S.C. § 636(c) and the Order of Reference for all purposes dated March 24, 2021 [Doc. 20]. For the reasons stated herein, the Motion is **DENIED without prejudice**.

## BACKGROUND

     Hollis Bailey ("Mr. Bailey") initiated this action on behalf of himself and all other similarly situated persons that are or were hourly, full-time, non-exempt security guards employed by Defendant United American Security, LLC ("Defendant"). *See generally* [Doc. 1]. Mr. Bailey alleged generally that he worked for Defendant as a full-time, non-exempt security guard and regularly worked more than 40 hours per week. [*Id.* at ¶¶ 8, 17, 21]. He asserted that he and other similarly situated employees were required to arrive at work approximately 10 to 15 minutes prior to the start of their shift for a "pass down," which involves "several shift-change duties that are

essential for a security guard to perform his or her job," such as learning about security issues that occurred on the previous shift and security issues that could potentially occur on the next shift. [*Id.* at ¶¶ 22-23]. Mr. Bailey alleged that he and other similarly situated workers were not paid for any of this "pass down" work. [*Id.* at ¶ 24].

Mr. Bailey initiated this action on January 26, 2021. *See* [*id.*]. Pertinent here, Mr. Bailey asserted that Defendant violated the FLSA, 29 U.S.C. § 201 *et seq.*, for not paying its full-time, non-exempt security guards for overtime hours worked. [Doc. 1 at ¶¶ 42-46]. This court held an initial Scheduling Conference on April 5, 2021, at which time certain class-certification deadlines were set, and set a second Scheduling Conference for June 16, 2021. *See* [Doc. 22 at 1]. On May 3, 2021, the Parties filed a Joint Stipulation for Conditional Certification and Request for Additional Time (the "Stipulation"). [Doc. 23]. In the Stipulation, the Parties indicated that they had stipulated to the conditional certification of the following class:

> [A]ll hourly security guards of Defendant who did not have an arbitration agreement with Defendant and who: (1) worked for [Defendant] in Colorado at any time between January 26, 2018 through the present; (2) worked forty hours or more in any workweek; (3) relieved a preceding shift; and (4) [were] required to arrive at work before his or her shift began to perform "pass on" or "pass down" duties, but [were] not paid for that time.

[*Id.* at 1]. The Parties further stipulated that, within 21 days of the Court approving the Stipulation, Defendant would provide Plaintiff's counsel with a list containing the names and last known home addresses for all security guards who worked within the relevant time frame and who did not have an arbitration agreement with Defendant. [*Id.* at 2].

The court approved the Stipulation for conditional certification and ordered Defendant to provide Plaintiff's counsel with the above-referenced list of names within 21 days. [Doc. 25]. A status-report deadline was set for July 6, 2021. [Doc. 24]. On that date, the Parties filed a Joint Status Update indicating that they had not yet reached a resolution in the case but had agreed to

attempt resolution before sending notice to the putative collective action members and engaging in discovery.  [Doc. 30 at 1].  Then, on July 15, 2021, the Parties filed a Stipulated Motion to Amend the Complaint to substitute the then-named plaintiff, Mr. Bailey, with Pamela Logan ("Plaintiff" or "Ms. Logan").  [Doc. 31].  After the court granted the Motion to Amend, [Doc. 32], Plaintiff filed a First Amended Complaint, [Doc. 33], which remains the operative pleading in this action.  After two additional extensions of time were granted at the Parties' request, *see* [Doc. 36; Doc. 37; Doc. 39; Doc. 40], the Parties filed a Joint Notice of Settlement and Joint Motion to Vacate Deadlines, indicating that they had reached a resolution in this matter.  [Doc. 41].  This court ordered the Parties to file appropriate papers on or before October 18, 2021.  [Doc. 42].  The Parties filed the instant Motion on October 15, 2021.  [Doc. 43].

## LEGAL STANDARD

The FLSA governs the payment of minimum wages and overtime compensation between an employer and its employees.  *See* 29 U.S.C. §§ 206, 207.  Under the statute, a covered employer must pay its employees for the time that it employs them, and the FLSA generally requires covered employers to compensate employees for work in excess of forty hours in a work week.  *See* 29 U.S.C. §§ 206(a), 207(a).  The required overtime compensation is one and one-half times an employee's "regular rate" of pay.  29 U.S.C. § 207(e).  The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  The FLSA "defines the verb 'employ' expansively to mean 'suffer or permit to work.'"  *Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 326 (1992) (quoting 29 U.S.C. § 203(g)).

Section 216(b) of the FLSA authorizes private individuals to recover damages for violations of minimum wage and overtime provisions.  It provides in relevant part that "[a]n action

to recover the liability [for unpaid overtime compensation] may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."  29 U.S.C. § 216(b).  The FLSA thus provides plaintiffs the opportunity to proceed collectively, which allows "plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources."  *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989) (interpreting the ADEA, which explicitly incorporates the collective action provisions of the FLSA).  Plaintiffs who wish to participate in an FLSA collective action must opt into the action.  29 U.S.C. § 216(b).  "The trial court is tasked with determining who is 'similarly situated' for purposes of a § 216(b) claim in a 'manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure.'"  *Pena v. Home Care of Denver, LLC*, No. 19-cv-00069-CMA-NYW, 2019 WL 5577947, at *1 (D. Colo. Oct. 29, 2019) (quoting *Hoffmann-LaRoche*, 493 U.S. 165 at 170-72).

In *Thiessen v. General Electric Capital Corp.*, the Tenth Circuit approved a two-step process, known as the *ad hoc* approach, for determining whether putative collective members are similarly situated to the named plaintiff.  267 F.3d 1095, 1105 (10th Cir. 2001).  Pursuant to this approach, the trial court determines at the initial "notice stage" whether the plaintiff has asserted "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan."  *Id.* at 1102.  During the second stage in the *ad hoc* approach, the court applies a stricter standard to determine whether the action should continue as a collective action. In particular, the court must evaluate the "disparate factual and employment settings of the individual plaintiffs; the various defenses available to defendant which appear to be individual to each plaintiff; fairness and procedural considerations; and whether plaintiffs made [any required

filings] before instituting suit." *Id.* at 1103 (citing *Vaszlavik v. Storage Tech. Corp.,* 175 F.R.D. 672, 678 (D. Colo. 1997)). Numerous courts in this District have followed this *ad hoc* approach in determining whether plaintiffs can move forward collectively under the FLSA. *See, e.g.*, *Pena*, 2019 WL 5577947; *Baldozier v. Am. Family Mut. Ins. Co.*, 375 F. Supp. 2d 1089, 1092 (D. Colo. 2005).

Here, given the Parties' procedural steps in this case, it appears that they agree that the two-step *ad hoc* procedure is appropriate, and the only issue before the court at this juncture is whether the Parties' proposed Notice of Collective Action Lawsuit (the "Notice of Collective Action") and Notice of Settlement and Right to Object ("Notice of Settlement") (collectively, the "Notices") are adequate. The court considers these issues below.

## ANALYSIS

The FLSA mandates that "[n]o employee shall be a party plaintiff to any [collective] action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b). The court has "broad discretion regarding the details of the notice sent to potential opt-in plaintiffs." *Lindsay v. Cutters Wireline Serv., Inc.*, No. 17-cv-01445-PAB-KLM, 2018 WL 4075877, at *3 (D. Colo. Aug. 27, 2018). "Under the FLSA, the Court has the power and duty to ensure that the notice is fair and accurate[;] it should not alter plaintiffs' proposed notice unless such alteration is necessary." *Bryant v. Act Fast Delivery of Colo., Inc.*, No. 14-cv-00870-MSK-NYW, 2015 WL 3929663, at *5 (D. Colo. June 25, 2015). "The overarching policies of the FLSA's collective suit provisions require that the proposed notice provide accurate and timely notice concerning the pendency of the collective action, so that [potential plaintiffs] can make informed decisions about whether to participate." *Lindsay*, 2018 WL 4075877, at *3 (quotation omitted, alteration marks in original). Although the

Parties have stipulated to their proposed Notices, the court must still review and approve the Notices.

*Procedural Aspects*. First, the court finds that the procedural aspects of the Notices are appropriate in this case. As to the method of delivery of the Notices, the Parties indicate that they will mail the Notice of Collective Action to the potential collective action members and, upon the expiration of the opt-in period, they will mail the Notice of Settlement to all members who have opted in. [Doc. 43 at ¶¶ 2-3]. "Typically, First Class Mail is [a] sufficient" method of serving an FLSA notice. *Sanders v. Glendale Rest. Concepts, LP*, No. 19-cv-01850-NYW, 2019 WL 6799459, at *4 (D. Colo. Dec. 13, 2019).[1] In addition, the Notice of Collective Action contains a 60-day opt-in period, [Doc. 43-1 at 3], which is favored in this District. *See, e.g.*, *Bracamontes v. Bimbo Bakeries U.S.A. Inc.*, No. 15-cv-02324-RBJ, 2017 WL 4621276, at *2 (D. Colo. Aug. 3, 2017); *May v. E & J Well Serv. Inc.*, No. 14-cv-00121-RBJ, 2014 WL 2922655, at *3 (D. Colo. June 27, 2014). I find that 60 days will provide potential opt-in plaintiffs with ample time to make an opt-in decision and respond to the Notice of Collective Action accordingly.

*Substantive Elements*. An FLSA notice should describe the nature of the FLSA collective action and offer the recipient the opportunity to "opt-in" to the action by filing a consent form. *See Pena*, 2019 WL 5577947, at *2. "It should also advise recipients of their right to be represented by counsel for the original plaintiff, to obtain independent representation, or to participate *pro se*," as well as explain "certain rights of an 'opt-in' plaintiff, including the right not

---

[1] The court notes that the Parties do not expressly state that they intend to use First Class Mail to distribute the Notices. *See* [Doc. 43]. Because this court is requiring the Parties to file a renewed motion for approval of the Notices to remedy the deficiencies identified below, the court **DIRECTS** the Parties to specify the class of mail they intend to use to deliver the Notices in the renewed motion.

to be bound by a settlement that the original plaintiff advocates." *Id.* (citing *Ortez v. United Parcel Serv., Inc.*, No. 17-cv-01202-CMA-SKC, 2018 WL 4328170, at *3 (D. Colo. Sept. 11, 2018)).

First, the court notes the substantive aspects which require no amendment. The Notice of Collective Action purports to apply to hourly security guards in Colorado who worked for Defendant from January 26, 2018 through May 14, 2021. [Doc. 43-1 at 2]. I find that the Parties have clearly articulated the time period applicable to the collective action. In addition, the Notices accurately describe the nature of this collective action, wherein "every named and 'opt-in' plaintiff pursues his or her individual claim . . . [and] the FLSA 'collective action' acts much like a civil suit with many plaintiffs who pursue their own claims." *Oldershaw v. DaVita Healthcare Partners*, Inc., 255 F. Supp. 3d 1110, 1113 (D. Colo. 2017). Indeed, the Notices do not refer to this matter as a "class action" nor to putative collective action members as "class members." *See* [Doc. 43-1; Doc. 43-2]. Finally, the Notice of Collective Action accurately informs putative members that they are under no obligation to join this case. [Doc. 43-1 at 3]; *see Oldershaw*, 255 F. Supp. 3d at 1115 ("The 'opt-in' plaintiff may choose to ride on the coattails of the original plaintiff or be represented by the counsel for the original plaintiffs, but he or she is not obligated to do so.") (citation omitted).

However, the Notice of Collective Action fails to (1) sufficiently apprise putative opt-ins of their ability to both opt-in <u>and</u> proceed either with independent counsel or *pro se*, and (2) inform putative opt-ins of their right not to be bound by a settlement that the original plaintiff advocates, even if they do "opt-in." *See* [Doc. 43-1]. Thus, the proposed Notices "fail to advise potential plaintiffs that she or he may choose to opt-in to the collective action *and* represent her or himself." *See Pena*, 2019 WL 5577947, at *2. First, the Notice of Collective Action "provides only one option for a potential plaintiff to select if she or he chooses to opt-in [to] the collective action"—

to be represented by Plaintiff's counsel. *See id.* at *3; *see also* [Doc. 43-1 at 3 ("If you return the consent form, you will be represented by the following attorneys with the law firm NILGES DRAHER LLC[.]")]. "Accordingly, to ensure that the proposed [Notice of Collective Action is] 'fair and accurate,' [it] must be modified to advise a potential plaintiff that she or he may opt-in the collective action <u>and</u> choose either to be represented by Plaintiff's counsel, to obtain independent representation, <u>or</u> to participate *pro se*." *See Pena*, 2019 WL 5577947, at *3 (emphases added).[2]

The proposed Notices also fail to inform putative opt-ins of their right not to be bound by a settlement that the original plaintiff advocates, even if they do opt-in to the action. [Doc. 43-1; Doc. 43-2]. Indeed, the proposed Consent Form attached to the Notice of Collective Action gives recipients who wish to opt-in only one option, requiring them to agree that "by filing this consent, [they] will be bound by any settlement or judgment of the Court on all issues in this case." [Doc. 43-1 at 4]. In addition, although the proposed Notice of Settlement references "an opportunity to object" and informs members that "[i]f [they] have any questions or objections about the settlement, they should be directed to Plaintiff's Counsel," [Doc. 43-2 at 2, 3], the court finds that this language does not adequately inform members of their right to not be bound by any settlement. Therefore, to ensure that the proposed Notices are "fair and accurate," the Notices:

> must be modified to advise a potential plaintiff of her or his opt-in rights, including whether to decline to be represented by the Named Plaintiff, whether to choose to make decisions on her or his own behalf concerning what claims and arguments should be presented and how, whether to accept any settlement offer or proceed to trial, and whether to be bound by a settlement that the Named Plaintiff advocates.

---

[2] For example, in *Pena*, the court expressed approval of language informing the potential opt-ins that, if they chose to participate personally, they would make decisions on their own behalf "concerning what claims and arguments should be presented and how, whether to accept any settlement offer or proceed to trial, and any other matters pertaining to this lawsuit. 2019 WL 5577947, at *3.

*See Pena*, 2019 WL 5577947, at *3.

Accordingly, the Parties are **ORDERED** to meet and confer to discuss amending the proposed Notices in compliance with the court's instructions and guidance stated herein.  On or before **November 8, 2021**, the Parties shall file a renewed motion to approve the Parties' amended Notices, accompanied by a mutually acceptable revised Notice of Collective Action and Notice of Settlement for the court's consideration.   In the event the Parties cannot arrive at mutually acceptable drafts, they shall submit a single proposed Notice of Collective Action and a single Notice of Settlement, indicating the language on which they agree and the language on which they cannot agree, as well as the content they propose, respectively.[3]

**CONCLUSION**

Accordingly, **IT IS ORDERED** that:

(1)    The Parties' Joint Motion for Approval of FLSA Opt-In Notice and Notice of Settlement [Doc. 43] is **DENIED without prejudice**;

(2)    On or before **November 8, 2021**, the Parties shall **FILE** a renewed motion to approve the Notice of Collective Action and Notice of Settlement;

---

[3] Insofar as the Parties state that, "in the event the Court determines that it can review and potentially approve settlement now [before the Notices are mailed and the opt-in period expires,] the Parties will promptly file a motion for approval of settlement," [Doc. 43 at ¶ 5], the court advises the Parties that any motion of for final approval of settlement should be filed only after court-approved notices have been mailed and all putative collective action members have been given the opportunity to opt in to this action.  "When putative class members have not yet received notice of the lawsuit and an opportunity to opt in, the Court cannot sustain a motion for final settlement approval."  *Christeson v. Amazon.com.ksdc, LLC*, No. CV 18-2043-KHV, 2019 WL 354956, at *4 (D. Kan. Jan. 29, 2019); *see also Prim v. Ensign United States Drilling, Inc.*, No. 15-cv-02156-PAB-KMT, 2018 WL 3729515, at *2 (D. Colo. Aug. 3, 2018) (stating that "many courts have rejected motions for final settlement approval where putative class members were not given notice and an opportunity to opt in to the lawsuit before the motion was filed" and citing cases).

(3)      The Scheduling Conference set for November 4, 2021 at 10:00 a.m. is **VACATED**, to be re-set if appropriate; and

(4)      The Parties' October 28, 2021 deadline to submit a Proposed Scheduling Order is **VACATED**, to be re-set if appropriate.

DATED:  October 26, 2021               BY THE COURT:

                                                    Nina Y. Wang
                                                    United States Magistrate Judge