IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Civil Action No. 21-cv-00257-NYW

PAMELA LOGAN, on behalf of herself and all others similarly situated,

    Plaintiff,

v.

UNITED AMERICAN SECURITY, LLC,

    Defendant.

---

### ORDER ON JOINT MOTION FOR APPROVAL OF FLSA SETTLEMENT

---

This matter is before the court on the Joint Motion for Approval of FLSA Settlement (the "Motion" or "Motion for Approval of Settlement") [Doc. 53].[1] Having reviewed the Motion, the applicable case law, and the entire docket, the Motion for Approval of Settlement is **DENIED without prejudice**.

### BACKGROUND

Hollis Bailey ("Mr. Bailey") initiated this action on behalf of himself and all other similarly situated persons that are or were hourly, full-time, non-exempt security guards employed by Defendant United American Security, LLC ("Defendant"). *See generally* [Doc. 1]. Mr. Bailey alleged generally that he worked for Defendant as a full-time, non-exempt security guard and regularly worked more than 40 hours per week. [*Id.* at ¶¶ 8, 17, 21]. He asserted that he and other similarly situated employees were required to arrive at work approximately 10 to 15 minutes prior

---

[1] Originally, this court fully presided over this matter pursuant to 28 U.S.C. § 636(c), [Doc. 14], and the Order of Reference for all purposes dated March 24, 2021. [Doc. 20]. On July 22, 2022, Judge Wang was confirmed as a United States District Judge.

to the start of their shift for a "pass down," which involves "several shift-change duties that are essential for a security guard to perform his or her job," such as learning about security issues that occurred on the previous shift and security issues that could potentially occur on the next shift. [*Id.* at ¶¶ 22-23]. Mr. Bailey alleged that he and other similarly situated workers were not paid for any of this "pass down" work. [*Id.* at ¶ 24].

Mr. Bailey initiated this action on January 26, 2021, asserting that Defendant violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, for not paying its full-time, non-exempt security guards for overtime hours worked. [Doc. 1 at ¶¶ 42-46]. This court held an initial Scheduling Conference on April 5, 2021, at which time certain class-certification deadlines were set, and set a second Scheduling Conference for June 16, 2021. *See* [Doc. 22 at 1]. On May 3, 2021, the Parties filed a Joint Stipulation for Conditional Certification and Request for Additional Time (the "Stipulation"). [Doc. 23]. In the Stipulation, the Parties indicated that they had stipulated to the conditional certification of the following class:

> [A]ll hourly security guards of Defendant who did not have an arbitration agreement with Defendant and who: (1) worked for [Defendant] in Colorado at any time between January 26, 2018 through the present; (2) worked forty hours or more in any workweek; (3) relieved a preceding shift; and (4) [were] required to arrive at work before his or her shift began to perform "pass on" or "pass down" duties, but [were] not paid for that time.

[*Id.* at 1]. The court approved the Stipulation for conditional certification. [Doc. 25].

On July 15, 2021, the Parties filed a Stipulated Motion to Amend the Complaint to substitute the then-named plaintiff, Mr. Bailey, with Pamela Logan ("Plaintiff" or "Ms. Logan"). [Doc. 31]. This court granted the Motion to Amend. [Doc. 32]. Then, on September 17, 2021, the Parties filed a Joint Notice of Settlement and Joint Motion to Vacate Deadlines, indicating that they had reached a resolution in this matter. [Doc. 41]. After the Parties' first motion for approval of the FLSA opt-in notice was denied without prejudice, *see* [Doc. 43; Doc. 44], this court granted

2

the Parties' renewed motion for approval of the opt-in notice on November 10, 2021. [Doc. 45; Doc. 46].

The Parties filed the Motion for Approval of Settlement on June 15, 2022. [Doc. 53]. Upon review of the Motion, this court informed the Parties that based on the record before the court, it was unable to determine the reasonableness of the Plaintiff's requested attorney's fees and thus could not adequately rule on the Motion. [Doc. 54]. Accordingly, the court ordered the Parties "to supplement the Motion for Approval of Settlement by submitting the information required by Local Rule 54.3, for each attorney for whom Plaintiff is seeking fees, on or before July 12, 2022." [*Id.*]. On that date, Plaintiff filed Plaintiff's Supplemental Evidence in Support of Joint Motion for Approval of FLSA Settlement (the "Supplement") [Doc. 57]. Being fully advised in the premises, I consider the Parties' arguments below.

**ANALYSIS**

Neither the Supreme Court nor Tenth Circuit has addressed whether a court *must* approve a settlement agreement under the FLSA, and there is a split of authority within the District of Colorado on this issue. *See Judd v. Keypoint Gov't Sols., Inc.*, No. 18-cv-00327-RM-STV, 2021 WL 75224, at *2 (D. Colo. Jan. 8, 2021); *Slaughter v. Sykes Enterprises, Inc.*, No. 17-cv-02038-KLM, 2019 WL 529512, at *2-6 (D. Colo. Feb. 11, 2019). However, "there does not appear to be disagreement at this time over whether FLSA settlements *may* be approved by" a court. *Slaughter*, 2019 WL 529512 at *6. In this instant action, the Parties seek court approval of their settlement agreement. [Doc. 53]. Having done so, this court turns to consider whether it should approve the Settlement Agreement.

When employees file suit against their employer to recover back wages under the FLSA, the parties may present any proposed settlement agreement to the court for a determination as to

whether the settlement agreement is fair and reasonable. *See Baker v. Vail Resorts Mgmt. Co.*, No. 13-cv-01649-PAB-CBS, 2014 WL 700096, at *1 (D. Colo. Feb. 24, 2014) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982)). Approval is appropriate if the Parties demonstrate that (1) the litigation involves a *bona fide* dispute, (2) the proposed settlement is fair and equitable to all parties concerned, and (3) the proposed settlement contains a reasonable award of attorney's fees. *Id.* at *1 (citing *Lynn's Food Stores*, 679 F.2d at 1354).

## I. *Bona Fide* Dispute

For the court to discern whether a *bona fide* dispute exists in this matter, the parties must present the following information to the court: (1) a description of the nature of the dispute; (2) a description of the employer's business and the type of work performed by the employee; (3) the employer's reasons for disputing the employee's right to overtime; (4) the employee's justification for the disputed wages; and (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage. *Pliego v. Los Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 117, 129 (D. Colo. 2016).

The Parties have adequately described their dispute here. Broadly speaking, Defendant provides security guard services for various customers. *See* [Doc. 33 at ¶ 16]. Plaintiff, a former security guard employee of Defendant, alleges that she and other security guards were required to arrive at work approximately ten to fifteen minutes prior to the scheduled shifts to receive security information from guards working the previous shift, but were not paid for this time. [*Id.* at ¶¶ 17, 22-23, 24, 29]. Defendant, however, disputes that Plaintiff and other security guards were not properly compensated for their time. [Doc. 35 at ¶¶ 24, 29]. In addition, Defendant asserts that it actually prohibits off-the-clock work, including for "pass down" sessions, and further asserts that any pre-shift work performed by Plaintiff or other guards was "noncompsensable, *de minimis*

time." [*Id.* at 11].  Plaintiff disagrees that the time spent conducting pass downs was de minimis and maintains that she and other guards should have been paid for that time worked.  [Doc. 53 at 4].  Based on the foregoing, I conclude that a *bona fide* dispute led to the settlement negotiation and resulting terms.

**II.     Fair and Equitable Settlement Agreement**

"To be fair and reasonable, an FLSA settlement must provide adequate compensation to the employees and must not frustrate the FLSA policy rationales."  *Baker*, 2014 WL 700096, at *2.  The "prime purpose" of the FLSA is to "aid the unprotected, unorganized and lowest paid . . . employees who lack[] sufficient bargaining power to secure for themselves a minimum subsistence wage."  *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707, n.18 (1945); *see also Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 147 (2012) ("Congress enacted the FLSA in 1938 with the goal of protect[ing] all covered workers from substandard wages and oppressive working hours." (citation omitted)).  "Normally, a settlement is approved where it is the result of contentious arm's-length negotiations, which were undertaken in good faith by counsel . . . and serious questions of law and fact exist such that the value of an immediate recovery outweighs the mere possibility of further relief."  *Felix v. Thai Basil at Thornton, Inc.*, No. 14-cv-02567-MSK-CBS, 2015 WL 2265177, at *2 (D. Colo. May. 6, 2015).

"Courts considering both individual and collective settlements under the FLSA turn to the factors for evaluating the fairness of a class action settlement under Fed. R. Civ. P.[] 23(e)."  *Albu v. Delta Mech. Inc.*, No. 13-cv-03087-PAB-KMT, 2015 WL 4483992, at *3 (D. Colo. June 30, 2015).  In determining whether to approve a class action settlement under Rule 23(e), the Tenth Circuit considers the following factors: (1) whether the parties fairly and honestly negotiated the settlement; (2) whether serious questions of law and fact exist which place the ultimate outcome

of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002).

The Parties have provided the court with a signed copy of the Settlement Agreement, *see* [Doc. 53-2], as well as declarations from two attorneys on this case. *See* [Doc. 57-1; Doc. 57-2]. The Settlement Agreement provides that Ms. Logan will receive $1,495.77 for alleged unpaid wages and $1,110.05 in liquidated damages. [Doc. 53-2 at 18].[2] Plaintiff's counsel represents that under the terms of the Settlement Agreement, Plaintiff "will recover 100% of her alleged unpaid wages (assuming 15 minutes of unpaid time per day), and approximately 75% of her alleged liquidated damages." [Doc. 53-1 at ¶ 4]. In addition, Ms. Logan is to receive a $750 service fee for her service as the named Plaintiff in this case. [*Id.* at ¶ 5]. The Agreement states that Plaintiff's counsel will seek a court order approving $14,348.75 in attorney's fees and costs. [Doc. 53-2 at ¶ 28].

Counsel represent that the Settlement Agreement was the product of "good-faith, arms-length settlement negotiations" and that they believe the settlement is fair and reasonable. [Doc. 53 at 4-5]. In addition, the Parties assert that the value of this recovery "far outweighs the mere possibility of future relief after protracted litigation," from which Ms. Logan could receive no recovery or a substantially lower amount of recovery. [*Id.* at 5]. Based on the Parties' representations of their respective positions and upon its review of the allegations and FLSA case

---

[2] The Settlement Agreement contemplates a "Global Settlement Fund" of $37,584.61, which accounts for the total amounts of all payments made to potential collective action members, Plaintiff's service award, and attorney's fees and costs. [Doc. 53-2 at ¶ 7]. Because no other putative plaintiffs opted in to this action, Ms. Logan remains the sole Plaintiff in this action.

law, the court agrees that questions of law and fact exist which might place the outcome of the litigation in question. As a result, I find that the value of recovery at this stage in the case outweighs the possibility of future relief for Plaintiff. I agree with the Parties that the proposed Settlement Agreement is fair and equitable to both Plaintiff and Defendant.[3]

The court must also consider whether the Settlement Agreement undermines the purpose of the FLSA, "which is to protect employees' rights from employers who generally wield superior bargaining power." *Morton v. Transcend Servs., Inc.*, No. 15-cv-01393-PAB-NYW, 2017 WL 977812, at *2 (D. Colo. Mar. 13, 2017). Factors that may cause a court to reject a proposed settlement include (1) the presence of other employees similarly situated to the claimant, (2) a likelihood that the claimants' circumstances will recur, and (3) a history of FLSA non-compliance by the same employer or others in the same industry or geographic region. *Id.* (citing *Dees v. Hydrady, Inc.*, 706 F. Supp. 2d 1227, 1244 (M.D. Fla. 2010)).

The Parties do not address these factors, which hampers this court's ability to meaningfully assess whether the Settlement Agreement undermines the purposes of the FLSA. Regardless, the court is persuaded that the Settlement Agreement does not have such an effect. While "[t]he record shows that no other similarly situated employees have sought to join this action," *Baker*, 2014 WL 700096, at *2 (D. Colo. Feb. 24, 2014),[4] the Parties represent that 37 putative collective action

---

[3] Although "[t]he reasonableness of a service award to a named Plaintiff is not generally listed as a factor to consider when deciding whether to approve a settlement[,] . . . 'reasonable incentive payments' have become common for class representatives, . . . and, apparently by analogy, for FLSA named plaintiffs as well." *Thompson v. Qwest Corp.*, No. 17-cv-01745-WJM-KMT, 2018 WL 2183988, at *3 (D. Colo. May 11, 2018) (citation omitted). The court concludes that the $750 service fee award to be paid to Plaintiff is reasonable. *See Porter v. BASF Corp.*, No. 19-CV-01352-KLM, 2021 WL 4426954, at *3 (D. Colo. Sept. 27, 2021) (approving $2,250 service fee award).

[4] The Settlement Agreement states that six individuals attempted to opt in to this action, but the Parties agreed that they were not proper opt-in plaintiffs. *See* [Doc. 53-2 at ¶ 15 n.2].

7

members declined to opt in, and thus it appears that there are some individuals similarly situated to Plaintiff who may be employed by Defendant and who may still be subject to Defendant's wage and hour policies. [Doc. 53 at 1-2]; [Doc. 53-1 at ¶ 2]. However, the court cannot conclude that this fact, alone, renders the Settlement Agreement contrary to the purposes of the FLSA. *See Pliego*, 313 F.R.D. at 130 (where there were "approximately 177 similarly situated employees who were the subject of the wage and hour policies employed by Defendants and, if not remedied, could recur," nevertheless concluding that the settlement agreement did not contravene the purposes of the FLSA). In addition, the court notes that the Settlement Agreement is filed on the public docket and "therefore gives notice to future plaintiffs of prior allegations of [Defendant's] improper conduct." *Slaughter*, 2019 WL 529512, at *7. Finally, there is no evidence before the court demonstrating that Defendant has a history of non-compliance with the FLSA. For these reasons, the court is satisfied that the proposed Settlement Agreement does not undermine the purposes of the FLSA.

### III. Attorney's Fees

Finally, the court considers whether the amount provided for in the Settlement Agreement for Plaintiff's attorney's fees is reasonable. Plaintiff's counsel request $12,000 in attorney's fees and $2,348.75 in costs. [Doc. 53 at 5]. Having entered into the Settlement Agreement and having joined in the Motion for Approval of Settlement, it appears that Defendant does not oppose this request. There is a general preference that parties reach an agreement regarding the fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee."). However, the court must nonetheless conduct an independent examination of whether the requested fees are reasonable. *See Silva v. Miller*, 307 F. App'x 349, 351-52 (11th Cir. 2009)

(holding that contingency contract between counsel and plaintiff did not abrogate court's duty to review the reasonableness of legal fees in an FLSA settlement).

A party seeking an award of attorney's fees must establish the reasonableness of each dollar and each hour for which the party seeks an award. *Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995). Courts may determine the reasonableness of a fee request by calculating the "lodestar amount," which represents the number of hours reasonably expended multiplied by a reasonable hourly rate. *Hensley*, 461 U.S. at 433. The "lodestar amount" represents the number of hours reasonably expended multiplied by a reasonable hourly rate. *See id*. Typically, "[t]o determine the number of hours expended, the Court reviews counsel's billing entries to ensure that counsel exercised proper billing judgment." *Porter v. BASF Corp.*, No. 19-cv-01352-KLM, 2021 WL 4426954, at *3 (D. Colo. Sept. 27, 2021). "The burden is on the party requesting fees to prove that its counsel exercised proper billing judgment." *Id.* Additionally, a "reasonable rate" is defined as the prevailing market rate in the relevant community for an attorney of similar experience. *Guides, Ltd. v. Yarmouth Grp. Prop. Mgmt., Inc.*, 295 F.3d 1065, 1078 (10th Cir. 2002). Again, the party requesting fees bears the burden of establishing that the billed rates are in line with the prevailing market rate. *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1203 (10th Cir. 1998). The court may "adjust the lodestar upward or downward to account for the particularities" of the work performed. *Phelps v. Hamilton*, 120 F.3d 1126, 1131 (10th Cir. 1997).

Plaintiff seeks $12,000 in attorney's fees—$6,000 to each law firm representing Plaintiff, *see* [Doc. 53-2 at ¶ 28]—for the work performed by five attorneys in this case: Jeffrey J. Moyle of Nilges Draher LLC, the lead attorney for Plaintiff, *see* [Doc. 57-1 at ¶ 1], as well as Anthony J. Lazzaro, Chastity L. Christy, Lori M. Griffin, and Alanna Klein Fischer, all of whom work for The Lazzaro Law Firm, LLC (collectively, the "Lazzaro Attorneys"). [Doc. 57-2 at ¶ 19]. Plaintiff

9

has submitted a declaration from both Mr. Moyle and Ms. Fischer, wherein each attorney sets forth an account of the hours expended on this litigation. Specifically, Mr. Moyle states that his regular billing rate for wage-and-hour cases is $450.00 per hour and that he performed 42.7 hours of work in this case. [Doc. 57-1 at ¶¶ 8-9]. Thus, Mr. Moyle's lodestar amount alone is $19,215.00. [*Id.* at ¶ 10]. In addition, Ms. Fisher states that Plaintiff seeks fees for hours billed by the Lazzaro Attorneys as follows:

> Mr. Lazzaro: 8.0 hours billed at $500.00 per hour
> Ms. Christy: 0.2 hours billed at $500.00 per hour
> Ms. Griffin: 3.4 hours billed at $475.00 per hour
> Ms. Fischer: 3.7 hours billed at $450.00 per hour

[Doc. 52-7 at ¶ 19]. Based on the court's own calculations, the Lazzaro Attorneys billed $7,065 for 15.3 hours expended. *See* [*id.* at 6].

With respect to the fees requested as to Mr. Moyle, the court concludes that the requested fees are reasonable. "Billing judgment consists of winnowing the hours actually expended down to the hours reasonably expended." *Case v. Unified Sch. Dist. No. 233, Johnson Cnty.*, 157 F.3d 1243, 1250 (10th Cir. 1998). In determining whether time devoted to a particular task was reasonable, the court considers "(1) the complexity of the case; (2) the number of reasonable strategies pursued; (3) the responses necessitated by the maneuvering of the other side; and (4) the potential duplication of services caused by the presence of multiple attorneys when one would suffice." *Porter*, 2021 WL 4426954, at *3 (quotation omitted). The court has reviewed the account of hours billed by Mr. Moyle, *see* [Doc. 57-1 at 5-6], and concludes that it reflects appropriate billing judgment given the complexity of this case, the time required to represent Plaintiff, and the demands of this litigation.

In addition, the court concludes that the $450.00 hourly billing rate charged by Mr. Moyle, an attorney with 11 years of experience, *see* [Doc. 57-1 at ¶ 8], is a reasonable market rate for this

District. *See, e.g.*, *Prim v. Ensign U.S. Drilling, Inc.*, No. 15-cv-02156-PAB-KMT, 2019 WL 4751788, at *7 (D. Colo. Sept. 30, 2019) (approving hourly rates of $400 per hour for attorney with eight years' experience and $650 per hour for attorneys with 18 and 22 years of experience); *Aguilar v. Pepper Asian Inc.*, No. 21-cv-02740-RM-NYW, 2022 WL 408237, at *7 (D. Colo. Feb. 10, 2022) (this court concluding that a $400.00 per hour rate was reasonable for an attorney with 16 years of experience); *compare Mendoza v. Valley Park Apartments, Inc.*, No. 13-cv-00002-PAB-KMT, 2014 WL 984687, at *6 (D. Colo. Mar. 13, 2014) ($250 was a reasonable rate for attorney with seven years of experience). Even if Mr. Moyle's billing rate is on the higher end for attorneys in this District, the court notes that the requested $6,000 fee is less than half of his lodestar amount, which supports the reasonableness of the requested fee. *See Aragon v. Clear Water Prods. LLC*, No. 15-cv-02821-PAB-STV, 2018 WL 6620724, at *7 (D. Colo. Dec. 18, 2018) ("Even if the rate is slightly higher than the rates customarily charged in this area, the 1.15 multiplier is lower than the lodestar multipliers that have been approved in other class action cases in this District."). Accordingly, the court concludes that the attorney's fees requested as to Mr. Moyle are reasonable for purposes of the FLSA.

However, the court is unable to reach the same conclusion with respect to the fees requested for hours billed by the Lazzaro Attorneys. Although this court ordered the Parties to submit "the information required by Local Rule 54.3, for <u>each attorney</u> for whom Plaintiff is seeking fees," *see* [Doc. 54], the Supplement fails to comply with this court's order and the Local Rules. Specifically, while Ms. Fischer's declaration includes a statement of her own experience and qualifications, the 3.7 hours she identifies for herself at a $450.00 per hour rate amounts to $1,757.50 – less than the $6,000 fee attributed to the Lazzaro Attorneys. The declaration does not set forth this same information for the other three Lazzaro Attorneys and thus does not include, "for <u>each person</u> for

11

whom fees are claimed[,] . . . a summary of relevant qualifications and experience." D.C.COLO.LCivR 54.3(b)(1) (emphasis added); *see also* [Doc. 57-2]. Without this information, the court is unable to determine the reasonableness of the requested fee. *Manohar v. Sugar Food LLC*, No. 16-cv-02454-NYW, 2017 WL 3173451, at *5 (D. Colo. July 26, 2017) (explaining that Local Rule 54.3 applies to motions to approve an FLSA settlement "because the Parties are seeking the court's approval of a privately negotiated amount for attorney's fees and costs" and concluding that the failure to provide the court with information concerning the attorneys' relevant experience and qualifications precludes the court from making a reasonableness determination). The fact that the requested fee appears, on its face, lower than the attorneys' combined lodestar amount does not change this conclusion. *See id.* (denying motion for failure to provide sufficient information even where the fee requested was "considerably lower" than the lodestar amount).

In addition, many of the tasks for which the Lazzaro Attorneys billed appear to be non-compensable clerical or administrative tasks that are not billable at an attorney's hourly rate. "[N]on-compensable clerical or administrative tasks" include, but are not limited to, "e-filing court documents, converting documents into PDFs, and sending emails to the Court regarding service of process." *Howard v. Midland Credit Mgmt., Inc.*, No. 11-cv-03123-PAB-BNB, 2012 WL 4359361, at *4 (D. Colo. Sept. 24, 2012). For example, Ms. Griffin and Ms. Fischer have billed for time spent applying for admission to the District of Colorado. [Doc. 57-2 at 6]. In addition, Plaintiff was billed 0.1 hour for an attorney "[s]ending [the] class list to [the] printer," [*id.*], which the court cannot conclude should be subject to a $450.00 per hour billing rate. *Arend v. Paez*, No. 12-cv-01270-DDD-SKC, 2019 WL 2726231, at *5 (D. Colo. July 1, 2019) ("[A]dministrative tasks such as . . . printing and emailing court documents and case pleadings . . . [do] not call upon [an attorney's] legal knowledge or expertise"). Nor is the court convinced that "mail merg[ing]

notices" or "[p]rep[ping] notices [and] envelopes for mailing" should be billed an attorney's rate. *Cf. Castro v. First Nat'l Collection Bureau, Inc.*, No. 11-cv-02298-REB-KMT, 2012 WL 4468318, at *2 (D. Colo. Sept. 27, 2012) ("It does not take a law degree or paralegal training to send an email.").

For these reasons, the court cannot conclude that the fee requested by the Lazzaro Attorneys is reasonable. Although the court may do so, the court declines to *sua sponte* adjust the lodestar fee for the Lazzaro Attorneys or disregard certain billed entries, given the Parties' contractual agreement as to the $6,000 fee.[5]  Instead, the court finds it appropriate to deny the Motion without prejudice, with leave to re-file if the Parties so choose. This court notes that the weight of authority in this District appears to lean against the need for court approval of FLSA settlements where there are no disputes pertaining to the agreement and where all plaintiffs participated in the settlement. *See, e.g.*, *Carroll v. Schlumberger Tech. Corp.*, No. 20-cv-00619-PAB-STV, 2021 WL 4245370, at *1 (D. Colo. Sept. 16, 2021); *Inniss v. Rocky Mountain Inventory, Inc.*, No. 18-cv-01475-WJM-KMT, 2020 WL 6318370, at *1 (D. Colo. Oct. 28, 2020); *Fails v. Pathway Leasing LLC*, No. 18-cv-00308-CMA-MJW, 2018 WL 6046428, at *3 (D. Colo. Nov. 19, 2018). While the fees to the Lazzaro Attorneys are not adequately supported by the record, they also do not appear egregious on their face. However, should the Parties continue to seek judicial review of their Settlement Agreement, they must cure the deficiencies as described by the court herein.

---

[5] The court notes that a requested fee that exceeds the lodestar amount is not *per se* unreasonable, and courts in this District have approved such fee requests. *See, e.g.*, *Aguilar*, 2022 WL 408237, at *6 (collecting cases). Indeed, the court's inquiry simply focuses on whether the hours billed were reasonable.

**CONCLUSION**

For the reasons set forth herein, **IT IS ORDERED** that:

(1)  The Joint Motion for Approval of FLSA Settlement [Doc. 53] is **DENIED without prejudice**; and

(2)  On or before **August 28, 2022**, the Parties shall either **DISMISS** this action pursuant to their settlement and Rule 41 of the Federal Rules of Civil Procedure or **RENEW** their Motion based on the instruction provided in this Order.

DATED:  July 27, 2022

BY THE COURT:

_____
Nina Y. Wang
United States District Judge